You may proceed. Thank you. Good morning, Robert Rexford for the Appellant Felicia Muhammad. It's okay with everyone. I'm going to address the first issue raised by Ms. Muhammad in her brief, the instructional error. And it's the one issue raised by Ms. Muhammad where the government and I disagree as to the standard of review and whether a harmlessness error analysis attaches to But after reading the government's 28-J letter that was filed, I believe, on Saturday, correct me if I'm wrong on that. We just love those Saturday filings. Frankly, I'm grateful that the case is important. And I'm a little sad that it was missed up until that point, to be perfectly honest with you. I think it's probably the most on point case. But as I was preparing for this argument, as I was reviewing the materials, it dawned on me that no matter what the standard of review may be, no matter what harmless error analysis this court may impose, the conviction still needs to be overturned. Sometimes it helps to go back to exactly what happened. The district court here instructed in a standalone instruction in appellant's ER at 13, court's instruction number 23, a standalone instruction, the district court instructed the jury that it could find Ms. Muhammad guilty of all five counts and then listed the things the jury would have to find, none of which adds up to a crime. It's just not a crime. The fact that this is a standalone theory of liability can also be seen appellant's excerpt of record at 484. When the government begins its closing argument, it lists these three separate ways in which the jury can reach a guilty verdict. And the government actually says in addition to aiding and abetting, you can find defendant guilty of making and then goes with the causation instruction. So the government's talking to the jury right back going, hey, look, in addition to that aiding and abetting, there's another way that she can be guilty and it's the straight causation, causing a crime to happen. So what additional language was needed in the instruction? Well, actually, there's some great language. The government cites a case called Ubaldo. And this is a case also where section two aiding and abetting instructional error was raised. And in Ubaldo at 699, this was the instruction actually given. And this was okay by this court, obviously. That is, whoever willfully causes an act to be done, and this is important to me, quote, which if directly performed by him or another would be an offense against the United States, end quote. Something along those lines. Because when you look at the actual instruction given to the jury, Ms. Muhammad, someone has to commit a crime. But there's no requirement that the jury has to find that Ms. Muhammad knew that someone committed the crime. There's no requirement that Ms. Muhammad caused something with the intent to have a crime committed. There's just nothing there. It's just that someone committed a crime and Ms. Muhammad did something to cause that crime. The other two instructions are okay, though, correct? The substantive and the first aiding and abetting? Yes. No issue with them whatsoever, sir. So let me ask you this. Let's assume for a moment that the instruction was incorrect. Why isn't it just harmless here? Or if you do plein air review, doesn't affect your substantial rights? I mean, there's a ton of evidence here. Maybe ton is too heavy. There's a lot of evidence. I believe this court likes the term overwhelming more than ton. Look, I'm not going to stand up here and say that there isn't sufficient evidence to convict Ms. Muhammad on the substantive count or on the aiding and abetting. There certainly is. Whether you want to say it's overwhelming, a ton, enough, that's all well and good. Here's the answer to your question, sir. Any harmless error analysis done in this context isn't a question of, hey, is there enough evidence that she's guilty of something? The harmless error analysis done in this context, and I can walk through the cases. Or substantial rights if it's plein air review. Yeah. And I can walk through the cases if you want. The harmless error analysis here is, are we certain, given what the jury found, that it necessarily had to have found other elements that would constitute a crime? And that's a wholly different harmless error analysis as opposed to when evidence is improperly admitted and you just take the evidence out and you sort of weigh it there. Sullivan and then Griffin and the late Justice Scalia, they always talk about, look, we need an object. We need an object. Yeah, I know. And the language is kind of weird. You know, eviscerates all finding object. But if you really think about it, if you read the Griffin case that I cite in my reply brief, I'm sorry, in the opening brief, and then you actually, for example, go to California v. Roy, which is cited in the Pulido case, the harmless error analysis, you have to go, look, what do we know the jury found? Right? What's the minimum that we know the jury found? And given that, are we convinced they had to have found... Well, on these facts, and they were correctly instructed on the substantive count and on the aiding and abetting count, we know that they found that she knowingly submitted false applications. I disagree 100 percent. And here's why. We don't know that. Well, what did the jury do? The jury... Based on the evidence that was presented to the jury... It's not just the evidence, sir. It's the evidence and the instructions. Well, I'm just saying on the first two counts, the jury found her guilty, correct? No, there were... No, I disagree. There were five counts. Well... She was found guilty. The first two theories, I don't know that. And truly with... Let me ask you, did they return a guilty verdict on the did not... How can I put this? When you look at... You're just talking on the substantive count. Forget the aiding and abetting. There's no indication in the verdict form what theory they did. I didn't ask you what theory. I just asked you, did they find her guilty of the substantive count? They found her guilty of count one, guilty of count two, guilty of count three. And there was no quarrel with the jury instructions, correct, on count one? No, there is. Because when the district court instructed the jury on the three theories, those applied to all five counts on which she was convicted. The jury... That's the problem, is we just don't know. We can speculate, right? We can say, hey, it's more likely than not they thought she substantively committed the crime. It's more likely than not that she was an aider or abetter as defined in the second theory. But that's not our role. That's not your role, right? She has a right to a jury finding. There has to be an underlying jury finding from which you can find that the jury necessarily would have had to have found facts that add up to a crime. And that's just not here. Well, either way though, we still have... You still have to get over either it's harmless if it's direct review or it didn't affect her substantial rights. The evidence here is... Again, I always forget, I'm over time, aren't I? No, not yet. Again, let me... Very quickly. In the United States v. Griffin, and this is cited in my opening brief, and this is at page 474, Justice Scalia discusses what type of review applies here. And it just... It's not a question. It just isn't. It's just not a question. But let's talk for a minute, but I wonder if you could answer his question a little more directly. Okay? There was a lot of... Forget about the cases for a second. Forget about the standard. We're all familiar with the standard. There was a lot of evidence in the record that she knew that the statements she was making to the bank were false. I agree. There's more than sufficient evidence. And so what's your theory? What's your argument for how the jury could have concluded that she didn't know that the statements that she submitted to the bank were false? Because there was an argument made by defense counsel that she didn't know. That was the defense at trial, and the instruction by the district court... Yeah, but what evidence supported the idea that she didn't know that this information was false? You know, I'm sorry. I don't have the ER sites off the top of my head. I do know that it was an argument made at trial. And that's the problem with the instruction. Why we don't know is even if the jury accepted the defense's argument... Yeah, but the defense lawyer could have argued that aliens forced her to sign the papers. And if there was no evidence to support that argument, then, you know, some error that didn't allow the jury to consider it is harmless, right? I mean, just because a lawyer argues something doesn't mean the jury might have founded that argument to be true. No, and here's why, I think, okay? Again, sorry, I don't have the ER sites on me. Look, that was the defense. It was resting on something. More importantly, well, more importantly, sir, it could have been the absence of proof. And you don't know. That is the problem. You can't go back because what finding was made, there's nothing to branch off on. It's not like they missed knowledge or found knowledge and could have found intent. It's just a wholly absent situation. I'm over time if there's any other questions. Okay, thank you. Thank you. And may it please the court, Ilana Artsin on behalf of the United States. Initially, Judge Wardlaw, I apologize for the late filing of my 28J letter. I stepped in at the last moment to cover this for a colleague who became unavailable. What's the case that's in there? Because I haven't even seen it. It's Hedgepeth versus Pulido. And it's a Supreme Court case in which essentially the Supreme Court held that virtually all instructional errors other than a defective reasonable doubt instruction are subject to harmless error analysis. And specifically in that case, it was an alternate theory error, which is the type of error that is at issue here. But the court said, you know, we've held that other types of instructional errors such as misstatement of an element, omission of an element, omission of intent, those are all errors that are not structural but rather trial errors and are subject to harmless error review. So alternate theory errors should also be subject to harmless error review. Let me ask you this. I've been around for about 24 years. I've never seen a 2B cause. I was going to ask the same question. Yeah, I've never seen a 2B theory of liability alleged. Well, how does it, why was it necessary and how does it fit in this particular scheme or charge? Why was it, it doesn't even seem to fit with what she did. It seems to fit more with respect to the fellow. What was the fellow's name? That's true, your honor. Typically that theory. Why was this even necessary? I don't know why the government does these things. Yeah, it just creates appellate issues for review. Your honor, typically that theory is used when you have an unwitting individual who's involved. So let's say you have a tax preparer who prepares. But that wasn't your theory in this case. And that wasn't the theory. I think that the concern out of an abundance of caution is she signed the bank. She caused that act to be done. She didn't really cause it to be done. I mean, if anything, it was the other way around. I mean, she didn't cause the fraud. She participated in the fraud by signing the false documents. And that's exactly our point. This theory really, I mean, the error here had to be harmless because the jury could not have been confused. This was not, first of all, truly a causing case. And moreover, the only contested issue here was knowledge. And the jury couldn't have been confused that that's what they were required to find. You know, basically the defense argument here is if you look at this one instruction in a vacuum, it doesn't state the knowledge element. But this court and the Supreme Court have repeatedly said that that's the wrong analysis. You have to look at the And you have to look at the charge in the context of the entire trial, including the arguments of counsel and the evidence. I have another question for you. So this is sort of a standard jury instruction. How did the government get it wrong? You know, there is not a model instruction on this. Maybe because it's not used very much. But doesn't the U.S. Attorney's Office have a set of instructions that they use for these things? First of all, Your Honor, I'm not conceding that it's wrong. Because causing an act to be done is not a stand-alone offense. And the way that I would explain how this charge is set up and why... I thought the government conceded it was error and it's brief. We did not concede that it's error. The defense argument is that we had to repeat the knowledge element. Because Section 2B just goes to the actus reus. It's a different way that the jury can find the actus reus is satisfied. It's very similar to a jewel instruction. In this case, there was a jewel instruction on knowledge. And that says, here's a different way that you can find knowledge. You don't have to repeat all of the other elements of the offense. Well, you know, this instruction that was given, you add the instruction was, first, the crime was committed by someone. And second, the defendant willfully ordered. Well, and our position is that there couldn't have been any confusion. What was willfully? Willfully is deliberately... It has no mens rea to it? There certainly couldn't have been any confusion here that the jury had to find intent and had to be done willfully, meaning deliberately and not carelessly. That was her defense, that she was careless. She didn't read the documents. There was a big stack of 100 pages. In other words, you can't willfully cause somebody to commit the crime of making a false statement to a bank unless you know that the statement to the bank that somebody is making is false. That's absolutely true. And this is not a case where the element was never given. The... There's no dispute that the jury was correctly instructed on all of the elements of the offense, including knowledge. The claim here is that that should have somehow been repeated in this Section 2B instruction. But when you look at the entire charge and the entire trial, the jury simply could not have been confused that they had to find knowledge. They were told the elements. The causation instruction included a willfully requirement. And if you look at the closing arguments, that was basically the only issue that was discussed in the defendant's closing argument. And it was the bulk of the government's closing argument because that was the only contested issue. So I would submit that this case is pretty similar to the Supreme Court's Park decision that we've cited in our brief. That was a Supreme Court case where there was a president of a grocery chain who was charged with adulterated food violations for rodent contamination in their warehouses. And he said, well, you know, the... There were isolated parts of the jury instruction that suggested that he could be convicted just for being the president of the corporation, which is not the law. And the Supreme Court said, no, if you look at the charge as a whole, it was clear that the jury was advised that he had to have some authority and responsibility to deal with the situation. And in particular, the Supreme Court cited the prosecutor's summation and said, you know, the jury could not have failed to be aware from the fact that that was a major part of the summation, that the main issue was the defendant's accountability for these unsanitary conditions and not simply whether he was the president of the corporation. Could I ask you a question following up on the question that both Judge Wardlaw and Judge Paez had? And this stems from my frustration as a district judge. Do you ever go back to your office and send around an email and say, hey, you know, I just had this argument and can you guys, like, be a little more thoughtful about, you know, the instructions you're offering at trial? And think... Don't just sort of blindly submit an instruction that follows the model, even if it doesn't have any connection with your theory of the case at trial. That is a great question, Your Honor. I mean, I really think like... And it is absolutely true. But your office, I mean, your office never should have submitted this instruction. The, you know, defense counsel obviously should not have agreed to it. And the judge reviewing it should have said, this instruction doesn't fit the facts of the case. I'm not giving this instruction. But I feel like my experience, I think, is similar to theirs in that, you know, the U.S. Attorney's Office up north is just constantly, like, blindly submitting these instructions without thinking about whether it fits their theory of the case or not. Well, I can't speak for the Northern District, but I am a member of the appeals section in the Central District. And I can tell you that our practice is every month, when we look at the issues that have come up in our cases, we definitely circulate throughout the office any concerns that have come up in those cases to let AUSAs in the office know, hey, you know, this is an issue that came up. This is how it should be done. Or, you know, hey, you might want to think about this. Well, then let's talk about another one that I think is pretty clearly an error. And that was the exclusion of the defense witness who would have testified to the same scheme. I mean, isn't that something that should have been admissible? Well, Your Honor, I would say two things about that. First of all, I think that everybody agreed at trial that this would, even if it, the only way it could possibly be relevant is if somehow this other individual, Femi Olgun, had an MO to recruit individuals and then have them unwittingly sign false documents. Wasn't that going to be the testimony? That was not the proffer. The proffer at ER 314 is simply that she was asked to be a straw buyer, and she didn't know that was wrong. It was not disputed here that the defendant was a straw buyer. She admitted that she was a straw buyer. That, the really relevant piece would be that she unwittingly signed false loan documents. There was nothing in the proffer that she unwittingly signed false loan documents. So given the proffer that was made, the district court did not abuse its discretion under Rule 403 because simply the fact that she was... But 403 is different than 404. Right. Well, even if it was admissible under Rule 404, certainly the district court did not abuse its discretion under Rule 403 because the actual proffer was of minimal probative evidence at best. It would have created a potential mini-trial about what Evans knew regarding these false statements. And I would also point out, Your Honor, it's not even clear she would have testified. She was appointed counsel given that there were clearly some potential Fifth Amendment issues, and the court didn't reach whether she actually would testify given that it excluded the evidence. But, you know, as the district court correctly pointed out, you couldn't call a government witness to say, hey, you know, I signed those false loan documents, and I knew that they were false, so the defendant did. I mean, the inference here... But isn't that kind of setting up a straw man? I mean, when the defendant is being charged with a crime and their liberty is at stake, I mean, isn't the analysis a little bit different when they want to call a witness? It is different. Correct. But you still have to look at, does that proffer show anything about her intent? And the fact that somebody... No, I get it. I get it. The problem I had with the district court's analysis is the opposite. That would never be allowed. I don't think that's the test, because I think we have to... The defense has a lot more leeway to put on their case, I think. Correct. That's true. But it's because the proffer has nothing to do with the intent that we have to show. And the same thing was true here. And even if it was excluded, it was clearly harmless, because there was compelling evidence that she knew that these statements were false. And the contrary evidence from this evidence, contrary inference from this evidence, was extremely weak. All right. You've gone two minutes over your time. So I will give the defendant's counsel one more minute to respond to some of these questions. Thank you, ma'am. Hopefully I won't take up all 60 seconds. Willfully is defined in the jury instruction. Okay? So at Appellant's ER 13, instruction number 23, the instruction at issue here, the district court defines willfully in that context. Deliberately caused someone to make a false statement to the bank. No. Performed an act deliberately and intentionally. Right. Performed the act of ordering the commission of a crime. Deliberately caused the crime of making a false statement to the bank to be committed. I just don't understand how that instruction does not call upon the jury to conclude that she knew that the information submitted to the bank was false, assuming that the theory applied to the case at all. Well, I mean, you could parse out if the only thing it said was willfully ordered the commission of the crime, but there's also, it's an or statement, or otherwise brought about the commission. There's nothing, there's nothing in there that says that she needs to know the crime occurred. She just had to have done an intentional deliberate act that otherwise brought about, otherwise brought about a crime. That's not a crime. No, she has to have willfully brought about the crime. Not she has to have willfully done an act that brought about the crime. She has to have willfully brought about the crime. That's what the instruction says. I disagree that the instruction says that. I mean, it's there in the record. It says willfully brought about the commission of the crime. That's what it says. There's nothing to agree or disagree about. It's, that's what the instruction says. Um, well, okay. Uh, it says second, the defendant willfully ordered, directed or otherwise brought about the commission of the crime. Right. Okay. You would say that the defendant knowing. That a crime had happened, wanting the crime to happen, anything, knowing, wanting, committing a crime, anything in there, what I'm saying is that instruction, you could do something intentionally and there's no requirement that you have to know that you're bringing about the crime. It says you have to willfully bring about the crime. Okay. Uh, you know, willfully do the act, but. I guess we'll continue to discuss this later. That's a discussion for you three. Yeah. One, um, I'm not going to, I know ma'am, I would cite the court to, uh, California V. Roy, 519 U.S. 7. Um, it's a case relied upon by the Pulido case raised in the 28 J. It has a great concurrence where it discusses harmless error in this specific context. Thanks for the extra time. Thank you, counsel. Um, U.S. versus Muhammad will be submitted.
judges: Wardlaw, Paez, Chhabria